Filed 12/13/22  P. v. Stutsman CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>TYLER STUTSMAN,<br><br>        Defendant and Appellant. | A164693<br><br>(Lake County<br>Super. Ct. No. CR955880) |

In January 2020, Tyler Stutsman was convicted of felony assault pursuant to a plea agreement.  (Pen. Code, § 245, subd. (a)(4).)[1]  The present appeal is from a judgment imposing a previously suspended sentence due to Stutsman's probation violation.  Appellant's counsel has filed a brief that raises no issue for appeal and asks this court for an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  We affirm.

**SUMMARY OF RECORD ON APPEAL**

On October 10, 2019, Clearlake Police Officer Steven Diaz was dispatched to the home of Champagne L., in response to a report that a bicyclist had been hit by a vehicle.  A neighbor who witnessed the incident

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

reported that the victim, G.G., was riding his bicycle near Champagne's residence when Stutsman drove down the street in his truck. The witness recognized Stutsman as the driver because Stutsman used to live with Champagne and visited her frequently. The witness reported that Stutsman and G.G. had "a beef over Champagne," and when G.G. saw Stutsman coming, he moved behind a trailer that was parked in front of the residence. After passing the trailer, Stutsman "accelerated at [an] approximately 45-degree angle and hit [G.G.]," who "went into the air and landed on his head and neck when he hit the ground."

At the scene of the incident, Officer Diaz found skid marks that started on the street and continued at a 45-degree angle to the gravel area behind the trailer where G.G.'s bike was lying. G.G. was transported to the hospital because of his injuries. His account of the incident was consistent with the witness's report. G.G. reported that he was on his way to visit Champagne, and that he tried to get out of the way when he saw Stutsman driving toward him. Stutsman "continued to rev up" his engine as he ran into G.G., then reversed direction and fled.

On November 15, 2019, Diaz went to Champagne's residence in response to a call that G.G. and Stutsman were having a verbal altercation. G.G. left the residence before Diaz arrived. Stutsman gave a statement after receiving his *Miranda* warnings. He claimed that he did not know anything about the October 10 incident; that he left town on October 9 to stay with his mother for three weeks; and that his truck was stolen while he was away. Another officer contacted Stutsman's mother, who did not corroborate her son's report.

Stutsman was charged with felony assault with a deadly weapon (§ 245, subd. (a)(1)) and a misdemeanor violation of Vehicle Code section

2

20001, subdivision (b)(1), for leaving the scene of an injury accident. He was held to answer on both charges based on the preliminary hearing testimony of Officer Diaz.

On January 14, 2020, the parties informed the court they reached a plea agreement pursuant to which Stutsman would plead no contest to an amended charge of assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)) and would be placed on three years' probation, with a condition that he serve 364 days in jail. The court accepted Stutsman's plea, found that he violated probation in two other cases by committing his current offense, and released him from custody pending sentencing pursuant to a "*Cruz* waiver."[2]

On February 10, 2020, Stutsman's case was called for pronouncement of judgment and sentencing. The court dismissed the misdemeanor charge, and pronounced the judgment of the court that Stutsman was guilty of felony assault. Stutsman waived arraignment for sentencing and stipulated to the admission of a presentence report prepared by the Lake County Probation Department (the department). According to the report, Stutsman has prior misdemeanor convictions for drug possession, petty theft, and infliction of corporal injury on a cohabitant. He admitted daily use of marijuana and methamphetamine, but denied having a substance abuse problem. A risk

---

[2] Once a plea agreement is approved by the court, the defendant may not be sentenced to a punishment that is more severe than specified in the plea, and if the court withdraws approval of the agreement, the defendant may withdraw the plea. (§ 1192.5) *People v. Cruz* (1988) 44 Cal.3d 1247 holds that a defendant who fails to appear for sentencing does not lose the protection of section 1192.5 but may expressly waive those rights, so that in the event of a willful failure to appear, the court may withdraw approval of the plea agreement and impose a sentence in excess of the bargained for term. (*Id*. at p. 1253–1254.)

assessment showed a high risk of reoffending and committing additional crimes in the future.

The department reported that the plea agreement for a grant of felony probation "does not appear appropriate." It did not appear that Stutsman was eligible for probation because he used his vehicle as a deadly weapon, and this was not an unusual case in which a grant of probation would serve the interests of justice. (See § 1203, subd. (e)(2).) Even if Stutsman was found eligible, the department opined he was not a good candidate for probation. If the court chose to deny probation, the department recommended that an upper terms sentence of four years in state prison would be appropriate, noting that "the factors in aggravation significantly outnumber and outweigh the lack of factors in mitigation." Despite opposing probation, the department reported that it would honor the plea agreement by recommending that Stutsman be placed on formal probation for three years, subject to conditions.

The trial granted probation based on the plea agreement, but cautioned Stutsman that "this was a very close call for the Court." The court found that the circumstances would justify denying probation, citing Stutsman's record of several misdemeanors, which included committing domestic violence against Champagne L., facts relating to the current offense, including that Stutsman was traveling at 20 miles per hour when he struck a man on a bike because he believed the victim was dating Champagne, and the fact that Stutsman was on probation when he committed the current offense. But, the court also found unusual circumstances to justify granting probation because Stutsman was 24 and, aside from the domestic violence, his criminal record was relatively minimal before committing the current offense.

The court suspended imposition of sentence and placed Stutsman on three years' formal probation, with conditions that included serving 364 days in local custody, with credit for 121 days. Stutsman was ordered to begin serving his jail term on April 15, 2020. Subsequently, his surrender date was postponed until January 6, 2021, due to the COVID pandemic.

On January 12, 2021, the department filed a petition to revoke Stutsman's probation. It alleged that on January 6, Stutsman called his probation officer from Hill Road Jail and asked if his surrender date could be extended to a later date. The officer instructed Stutsman to surrender himself and then contact his lawyer. Instead, he fled the facility while staff were processing his intake. An arrest warrant issued and after Stutsman was taken into custody, he denied the probation violation.

On June 8, Stutsman admitted his probation violation and agreed to waive his accrued custody credits.[3] Probation was reinstated with modifications, including that Stutsman was to serve 360 days in custody, with 180 days to be served in jail, while the balance could be served at a residential treatment program.

On October 22, 2021, the department filed another petition for revocation of probation. According to the petition, Stutsman was admitted to the Salvation Army's residential treatment program in early September, but left the program on October 6 without authorization. After an arrest warrant

___

[3] "[A] defendant can expressly waive entitlement to credits for time served." (*People v. Johnson* (2002) 28 Cal.4th 1050, 1052.) This so-called *Johnson* waiver "enables a sentencing court to reinstate a defendant on probation after he or she has violated probation one or more times, conditioned on service of an additional county jail term, as an alternative to imposing a state prison sentence." (*People v. Jeffrey* (2004) 33 Cal.4th 312, 315.) The waiver "applies to any future use of such credits should probation ultimately be terminated and a state prison sentence imposed." (*Ibid.*)

was issued, Stutsman appeared on November 15. The matter was continued until November 30 and another warrant issued when Stutsman failed to appear, although the bail forfeiture was subsequently set aside, bond was reinstated, and Stutsman was released from custody pending a contested hearing on the revocation petition.

The contested hearing was held on February 1, 2022. The probation officer testified that Stutsman was referred to the Salvation Army in Lodi, entered treatment on September 7, but then walked away from the program on October 6. Stutsman did not contact the department to request another program and did not call his probation officer until after the revocation petition was filed. Stutsman testified that he left the treatment program because staff would not agree to take him to court hearings in a family law matter involving his son. He explained that his son is important to him, so he had to "get that figured out," which meant leaving the program. Then he looked for another program but had issues with his Medi-Cal benefits. Eventually, he found a program in Mendocino and was trying to get his benefits transferred. He had been so busy since leaving the treatment facility, he did not even think to call his probation officer.

The trial court found Stutsman committed a willful violation of probation by intentionally leaving the program without obtaining permission or contacting his probation officer to seek assistance. But in light of his explanation, the court requested further evaluation from the department. The matter was continued until February 28 for sentencing, with the understanding that if Stutsman got into a treatment program before the next hearing, he would be permitted to stay there.

At the February 28 hearing, the parties stipulated to admitting the supplemental probation report into evidence. The department reported that

6

Stutsman had disregarded conditions of his probation, and directives of the department and the court, and that his overall performance on probation was poor. "He has absconded from supervision, failed to report monthly on a regular basis, failed to complete his treatment program/jail sanction and continues to commit new law violations," the report states. He was "given numerous opportunities to rehabilitate and make positive choices; however, failed to do so."

The department recommended that probation be permanently revoked and that the court impose a midterm sentence of three years in state prison for the felony assault conviction. It observed that the record would support an upper term sentence but opined that a midterm sentence was appropriate "based on current law." The People concurred with the recommendation. The defense requested that the court restore Stutsman to probation on some basis, arguing that he made a good faith effort to get into treatment. Stutsman addressed the court directly, reporting that he located a program in Santa Rosa with an available bed and planned to go there the next day.

After the matter was submitted, Stutsman and an unidentified zoom speaker repeatedly interrupted the court as it announced Stutsman's sentence. The court found there was a long history of failing to comply with probation, which included absconding, failing to report, and failing to complete programs. The circumstances surrounding the felony assault were as serious as other instances of the same crime, the crime was not committed because of an unusual circumstance, and Stutsman's convictions were numerous and increasingly serious. Despite these facts, he was "given a chance at probation" and "failed to comply with virtually any aspect of it."

Stutsman was sentenced to state prison for the middle term of three years. The court did not impose fines and fees. It awarded actual time and

7

conduct credits.  Because Stutsman was not currently in custody, he was ordered to report at the Lake County jail on March 3, 2022.  Stutsman's request to postpone his surrender date was denied.

## DISCUSSION

The *Wende* brief filed by appellant's counsel draws attention to one unbriefed issue that " 'might arguably support the appeal.' "  (Quoting *Anders v. California* (1967) 386 U.S. 738, 744.)  Specifically, counsel considered whether the trial court abused its discretion by refusing to reinstate Stutsman on probation, but concluded that the issue did not warrant briefing.  Based on our independent review, we agree.

As a preliminary matter, the finding that Stutsman violated probation is subject to review for substantial evidence.  (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318 (*Butcher*).)  The record shows that Stutsman admitted that he left his treatment program without permission in violation of an express term of his probation, and that this term was imposed in response to a prior violation that Stutsman also admitted.  Thus, the finding that Stutsman committed a second willful violation of probation is supported by substantial evidence.

The trial court's decision not to reinstate probation is subject to review for abuse of discretion.  (*Butcher, supra,* 247 Cal.App.4th at p. 318; *People v. Downey* (2000) 82 Cal.App.4th 899, 909 (*Downey*).)  The decision " 'will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner.' . . .  We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' "  (*Downey,* at pp. 909–910.)

8

Here, the record shows that the trial court considered all relevant facts and that its decision was neither arbitrary nor capricious. The initial grant of probation was a close call, as Stutsman was advised when he was afforded the opportunity to avoid prison time. Stutsman squandered that opportunity by repeatedly violating probation, failing to report, absconding, and most importantly leaving residential treatment. Stutsman did not seek advice or assistance from the department before making the unilateral decision to leave that program.

At the sentencing hearing, Stutsman argued that probation should be reinstated because of his good faith effort to get into a program. The trial court did not abuse its discretion by rejecting this claim. At the revocation hearing, Stutsman was given another opportunity to get into treatment based on his representation that he had been conditionally accepted at a program in Mendocino. And yet, at the sentencing hearing, he had only a vague plan to visit a program in Santa Rosa.

Our independent review discloses no other issue requiring further briefing. We note that although Stutsman was 24 when he committed the current offense, he received a midterm rather than a lower term sentence. (See § 1170, subd. (b)(6)(B).) This sentencing decision raises no issues for further briefing. The department identified multiple aggravating circumstances, and no mitigating circumstances, and the record contains substantial evidence that imposition of a lower term would be contrary to the interests of justice. Aside from his sentence, Stutsman was not required to pay fines or fees, and his custody credits reflect the fact that he entered a *Johnson* waiver when probation was reinstated after a prior violation.

Appellant was appraised of his right to file a supplemental brief and to request to have his counsel relieved, but he did neither. (See *People v. Kelly*

(2006) 40 Cal.4th 106, 110.)  Following *Wende* guidelines, we have conducted an independent review of the record summarized above and conclude there are no meritorious issues to be argued on appeal.

**DISPOSITION**

The judgment is affirmed.

TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

*People v. Stutsman* (A164693)